No. 13.—JAMES A. HANNAHAN, plaintiff in error, *vs.* JAMES W. NICHOLS, defendant in error.

[1.] A *ne exeat regno* issues only in cases in which the party against whom it issues cannot be held to bail at Law.

[2.] A sells B a slave and takes B's note with a surety on it for the purchase-money. B and his surety fail to pay the note and have nothing from which to pay it, except the slave. B is trying to sell the slave, and A having sued B at Law on the note, sues him also in Equity, alleging in his bill that he has good reason to apprehend that B will sell the negro : *Held*, that this does not make a case for the interposition of a Court of Equity on principles *quia timet.*

In Equity, in Baker Superior Court. Decision by Judge ANDREWS, November Term, 1854.

Hannahan filed a bill, alleging that in 1853, by his agent, he sold to Nichols a negro for $1100, and took his note, with one Delancey as surety. That Nichols agreed to furnish materials and build a gin-house for complainant by a certain time, for which he was to have a credit on the note of $600. That this contract was the principal object of selling the negro, and Nichols was unable otherwise to pay for him. That Nichols had failed to comply with the contract, and that he and Delancey are insolvent and unable to pay the note, except by the proceeds of the negro. That Nichols was trying to sell the negro, so as to defeat the complainant ; and complainant had good reason to apprehend that Nichols would sell the negro and leave the county and State, and thus defraud complainant. That he had commenced suit on the note in Baker Superior Court : Prayer, that Nichols might give bond and security for his appearance, to answer the said action on the note, as well as for the forthcoming of the negro, to answer the judgment at Law, and for the writ of *quia timet.*

On motion of defendant's Counsel, this bill was dismissed for want of equity, and because complainant had an adequate Common Law remedy. This decision is assigned as error.

R. F. Lyon, for plaintiff in error.

A. Hood and L. Warren, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

[1.] "A *ne exeat regno* issues only where the claim upon the party going abroad is equitable, and it will be refused upon a mere demand at Law for money, 'for there' it is said 'the defendant may be arrested and obliged to give bail, who will be liable unless they surrender him; and· he may be as easily taken by that process as on a writ of '*ne exeat regno.*'" (3 *Daniel's Ch. Pr.* 375.)

The demand, in this case, was a debt for $1100, secured by a promissory note. It was one, therefore, on which Nichols, the principal in the note, might have been held to bail at Law.

The bill, therefore, contains no equity for a *ne exeat regno.*

Hannahan, by selling the slave to Nichols, and taking Nichols' note for the payment of the price, parted with all title to the slave. He retained no lien on the slave for the pur-chase-money. The result of the transaction was to make him, Hannahan, a creditor, a mere creditor of Nichols', and of Nichols' surety, and to make these latter debtors mere debtors of him. The bill does not pray for a rescission of the contract, on the ground of fraud or on any ground—on the contrary, it insists on the rights given by the contract. On a rescission of the contract, the title to the slave would, of course, revest in Hannahan. But whether, if the bill were one for rescission, the facts of it are such as to warrant an application for a receiver or other expedient for securing the property, i. e. the slave, pending the litigation, this Court is not called upon to decide.

The case, as made, is one in which the complainant shows no right, title or interest in the slave, for the forthcoming of which he prays the Court to compel the defendant to give security; and to such a case as that the *quia timet* principle has

never been extended. That principle has never been extended to the case of a creditor who could say no more than that his debtor had but barely property enough to pay the debt due to him, and that the debtor was trying to sell the property, so as to prevent it from becoming subject to the payment of the debt. Whenever there is a sale of property, without reservation of any sort, the effect is to give the purchaser absolute dominion over the property sold, and consequently to give him power to sell it. If the seller wishes to prevent any thing of that kind from being done, it is easy for him to prevent it at the time of the sale, before he parts with the property. Let him take a mortgage. The prayer of this bill is, in effect, that the Court will make Nichols, the purchaser, give Hannahan, the seller, a mortgage on the slave sold, and that long after the sale. The prayer is that Nichols may give a bond for the forthcoming of the slave, to *answer the judgment* which may be obtained at Law.

The *quia timet* power of a Court of Equity is quite a vague one, (and therefore a dangerous one) but it has never, as far as I can find, been applied to such a case as that made by this bill. This Court will not be the first to extend it to such a case. (1 *Maddock's Ch. P.* 218. *Story's Eq. Jur.* " *Bills quia timet.*")

But if the bill has in it no equity as a bill for a *ne exeat* and none as a bill *quia timet*, it has in it no equity at all. Whatever other relief a Court of Equity could grant, can be equally as well granted by a Court of Law, and granted in the suit on the note already pending in a Court of Law—the Court below.

The Court below was right, therefore, in dismissing the bill for the want of equity.